IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VANESSA MARTINEZ, individually, and on behalf of her two minor children, C.M. and A.M.; and AIDA RODAS,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>LEE GAINES, Supervisory Detention and Deportation Officer, United States Immigration and Customs Enforcement ("ICE") Nashville Fugitive Operations Team ("NVLFOT"); JOHN DOES 1-3, Deportation Officers, ICE NVLFOT; NEW BIRNAM WOOD ASSOCIATES, LP; RP MANAGEMENT, INC.; and JANE ROE,<br><br>*Defendants.* | Case No.<br><br>**JURY DEMAND** |

## COMPLAINT

1. This is a civil rights action raising constitutional claims under the Fourth and Fifth Amendments to the United States Constitution against federal immigration officers pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 401 U.S. 388 (1971), and federal- and state-law claims against private actors for their participation in the warrantless and unlawful entry of Plaintiffs' home, the illegal seizure of Plaintiffs, and the unreasonable search of their private residence and personal effects.

2. On October 27, 2010, three agents of ICE's Nashville Fugitive Operations Team targeted Plaintiff Martinez's apartment at the Hickory Hollow Apartment complex in Antioch, Tennessee. After she refused to answer her door, these agents secured the assistance of Hickory Hollow staff to obtain a key and enter Plaintiff Martinez's apartment.

3. Despite the absence of consent or any warrant of any kind, Defendant ICE Agents obtained a manager's copy of the key to Plaintiffs' private home, entered the residence, and proceeded to terrorize its occupants.

4. One ICE agent grabbed Plaintiff C.M., a United States citizen who was less than three years old at the time, and said to him, over and over again, "¡Dime adonde esta tu papa!" ("Tell me where your father is!) C.M. cried and screamed in terror as he tried to break free from the agent's grasp.

5. An ICE Agent repeatedly threatened to separate Plaintiffs C.M. and A.M. from their mother, Plaintiff Martinez, if she did not immediately cooperate. When she attempted to invoke her right to counsel, the ICE Agent threatened to arrest her and take her children away.

6. When Plaintiff Martinez's U.S. citizen aunt, Plaintiff Rodas, arrived at the apartment prior ICE agents' warrantless home invasion and demanded to see their warrant, one of the Defendant ICE Agents showed her the ICE shield on his jacket and told her, in Spanish, "I'm an ICE Officer. Move out of the way." Plaintiff Rodas was then threatened with immediate arrest by apartment manager Defendant Jane Roe, who personally used the complex's key to open the door for ICE.

7. Plaintiffs bring this action to vindicate their rights under the Fourth and Fifth Amendments to the United States Constitution, and federal and state law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201 and 2202 (declaratory relief). Supplemental jurisdiction over Plaintiffs' state claims lies pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to

Plaintiffs' claims occurred in this District, and also under 28 U.S. C. § 1391(e)(3), because at least one of the plaintiffs resides in the District.

## PARTIES

### Plaintiffs

9. Plaintiff **Vanessa Martinez** ("Plaintiff Martinez") is a twenty-six year-old resident of Nashville. She resided in Hickory Trace Apartment Unit 32 on October 27, 2010. Plaintiff Martinez brings this action on behalf of herself and also as parent and next friend of her two minor children, **C.M.**, and **A.M.**, both of whom are U.S. citizens and both of whom were inside Unit 32 on October 27, 2010.

10. Plaintiff **Aida Rodas** ("Plaintiff Rodas") is a forty year-old Nashville resident and United States citizen. She was present at Hickory Hollow Apartment Unit 32 during the warrantless entry into Plaintiff Martinez's home without consent on October 27, 2010.

### Defendants

### ICE Defendants

11. Defendant **Lee Gaines** ("Defendant Gaines") was at all times relevant to this action a Supervisory Detention and Deportation Officer with the ICE Nashville Fugitive Operations Team ("NVLFOT"). He was responsible for carrying out and supervising NVLFOT immigration law enforcement operations and the policies, practices, and/or customs of the Fugitive Operations Team based in Nashville, Tennessee. As the Nashville Fugitive Operations Team's immediate supervisor, he was at all times relevant to this action responsible for monitoring and supervising subordinate ICE agents, including their activities in the field. Upon information and belief, Defendant Gaines personally authorized and approved the ICE Field Operations Worksheet prepared in advance of the NVLFOT Operation at Plaintiff Martinez's

apartment. Defendant Gaines is sued in his personal capacity. At all times relevant to this Complaint, Defendant Gaines acted under color of federal law.

12. Defendants **John Does 1-3** (collectively, "Defendant ICE Agents") were at all times relevant to this action deportation officers or agents of ICE NVLFOT. Defendant ICE Agents personally entered and/or participated in the entry of Plaintiff Martinez's apartment on October 27, 2010. They are sued in their individual capacities. Defendants ICE Agents acted under color of federal law.

13. Plaintiffs are presently unaware of the true names and capacities, whether individual or otherwise, of Defendant ICE Agents, and therefore sue those defendants using fictitious names. Plaintiffs will amend this Complaint to allege the Doe Defendants' true names and capacities once they have been ascertained.

**Private Party Defendants**

14. Defendant **New Birnam Wood Associates, LP** ("Defendant New Birnam") is a Pennsylvania limited partnership with its principal office in Wynnewood, Pennsylvania. Defendant New Birnam purchased the Hickory Hollow Apartments in 2005.

15. Defendant **RP Management, Inc.** ("Defendant RP") is a corporation headquartered in Wynnewood, Pennsylvania. Defendant RP has assumed the name "RP Management of Tennessee, Inc." for the purpose of doing business in Tennessee. At all times relevant to this action, Defendant RP managed Hickory Hollow Apartments, located at 300 Hickory Hollow Place in Antioch, Tennessee. Defendant RP's management responsibilities include the hiring, training, supervision, and payment of on-site leasing, management, security and maintenance staff.

16. Defendant **Jane Roe** was at all times relevant to this action an agent and/or employee of Defendant RP and/or Defendant New Birnam. Defendant Roe personally assisted Defendant ICE Agents in making warrantless, nonconsensual entry into Plaintiff Martinez's apartment on October 27, 2010. She personally threatened Plaintiff Rodas with arrest. At all times relevant to this complaint, she was acting within the scope of her employment.

17. Plaintiffs are presently unaware of the true name and capacity of Defendant Jane Roe, and therefore sue this defendant using a fictitious name. Plaintiffs will amend this Complaint to allege the Defendant Roe's true name and capacity once it is ascertained.

## STATEMENT OF FACTS

### A. *Warrantless Entry Into Plaintiff Martinez's Home Without Consent*

18. Around 10:00 a.m. on Wednesday, October 27, 2010, Plaintiffs Martinez, C.M., and A.M. were inside their home at Apartment 32 of the Hickory Hollow Apartments when Plaintiff Martinez heard knocking on the front door.

19. All of the apartment's doors and windows were closed and locked when the knocking began.

20. Plaintiff Martinez looked out a window and saw several men with dark vests and/or jackets that read "ICE".

21. At no time did any of the men outside Plaintiff Martinez's home say or indicate that they had a warrant to enter the residence.

22. Plaintiff Martinez refused to answer the door, despite repeated banging. Instead, she called Plaintiff Rodas.

23. One Defendant ICE Agent remained outside the door while the other two Defendant ICE Agents located Hickory Hollow Apartments staff and/or Defendant Jane Roe to obtain a key to Apartment 32.

24. Several minutes after the initial banging on her door, Plaintiff Martinez heard more banging.

25. Plaintiff Martinez took Plaintiffs C.M. and A.M. into the bedroom. At this point, all persons inside Apartment 32 – Plaintiffs Martinez, C.M., and A.M. – were inside the bedroom.

26. Plaintiff Martinez then heard agents banging on the bedroom window.

27. Terrified, Plaintiff Martinez brought her two children into the bathroom inside her bedroom. She closed the bathroom door and locked it.

28. Plaintiff Rodas arrived at Hickory Hollow Apartments while the two Defendant ICE Agents were returning to Apartment 32 with a female Hickory Hollow apartment manager, Defendant Jane Roe, in a golf cart. They all walked down the stairs to Apartment 32 at the same time.

29. Plaintiff Rodas witnessed Defendant ICE Agents order Plaintiff Martinez to open the door.

30. When Plaintiff Martinez did not open the door, Defendant Jane Roe inserted a key into the front door of Apartment 32, turned the key, and opened the door.

31. One Defendant ICE Agent – a shorter white male – immediately entered the residence.

32. The two other Defendant ICE Agents remained outside, one guarding the door, the other guarding a window.

33. Plaintiff Rodas asked the Defendants who remained outside the apartment repeatedly to see an order or letter or warrant giving them permission to enter Plaintiff Martinez's home.

34. She said to a tall, white Defendant ICE Agent, "Enseñome la carta para abrir la puerta." ("Show me the letter for opening the door.")

35. This Defendant ICE Agent responded by grabbing the shield or emblem on his jacket, pulling it toward Plaintiff and showing it to her, and saying, "Soy oficial de ICE. Mueve te ayi." ("I am an ICE Officer. Move out of the way.")

36. Then Defendant Jane Roe began questioning Plaintiff Rodas, in English. She demanded to know Plaintiff Rodas's name and why she was there.

37. Defendant Jane Roe threatened to call the police and arrest Plaintiff Rodas for criminal trespassing if she persisted in her requests for a warrant or other order granting ICE legal cause to enter Plaintiff Martinez's apartment.

*B. ICE Agents' Warrantless Seizure of Plaintiffs Martinez, C.M., and A.M.*

38. Plaintiff Martinez and her children remained in the locked bathroom when the first Defendant ICE Agent entered her residence.

39. This Defendant ICE Agent went into the bedroom and began knocking on the bathroom door. He said, in Spanish, over and over, "¡Abrir la puerta, Vanessa!" ("Open the door, Vanessa!")

40. Plaintiff Martinez did not open the bathroom door. She and the children were crying inside the bathroom.

41. Then the Defendant ICE Agent who was outside the bathroom door said, "¡Abrir la puerta o la tunbamos!" ("Open the door or we'll knock it down!")

42. Plaintiff Martinez ultimately unlocked the bathroom door and came out.

43. She exited the bathroom with her children only after Defendant ICE Agent ordered her in Spanish to do so. She did not feel free to refuse these commands.

44. When they saw the Defendant ICE Agent, Plaintiffs Martinez and A.M. did not feel free to leave or terminate their encounter with Defendant ICE Agents.

45. The Defendant ICE Agent who guarded the apartment's front door – a tall male who spoke Spanish – grabbed Plaintiff C.M. by the arm as he attempted to run away.

46. This Defendant ICE Agent then said to Plaintiff C.M., repeatedly, in Spanish, "¿Tu papa viva aqui? ¿Donde esta tu papa? ¿Dime adonde esta tu papa? ¡Dime adonde esta tu papa! ("Does your father live here? Where is your father? Tell me where your father is? Tell me where your father is!")

47. Plaintiff C.M. was crying as he struggled to get away from this Defendant ICE Agent.

48. Eventually, the Defendant ICE Agent released C.M. and ordered him not to move.

49. The shorter Defendant John Doe ICE Agent who was closer to the bathroom interrogated Plaintiff Martinez.

50. This Defendant ICE Agent said to Plaintiff Martinez, over and over again, in Spanish "¡Dime adonde esta tu esposo!" ("Tell me where your husband is!")

51. Eventually, Plaintiff Martinez replied, "Yo se que tengo que dici nada si no esta mi abogado presente." ("I know that I don't have to say anything if my lawyer is not present.")

52. The Defendant ICE Agent who was questioning Plaintiff Martinez got visibly angry. He replied, "¡Tu no entiendes como son las casas aqui! ¡Tu no entiendes nada! Si tu no me dices donde esta [su esposa] te arresto y te quito los niños! ("You don't understand how

things are here! You don't understand nothing! If you don't tell me where [your husband] is, I will arrest you and take your kids away!")

53. This Defendant ICE Agent repeated his threat to take Plaintiff Martinez's children away several additional times during the encounter.

54. This Defendant ICE Agent later ordered Plaintiff Martinez to present herself at 247 Venture Circle the following morning with her passport and without her children or anyone else. He instructed her that if she did not report to this address at this time, he would come and arrest her and take her children away.

55. 247 Venture Circle is one of ICE's Nashville locations and serves as the intake and processing center for people ICE apprehends.

56. ICE policy generally prohibits FOT officers from detaining women who are the sole caregivers of minor U.S. Citizen children, absent other circumstances.

### C. *Warrantless Search Of Plaintiff Martinez's Home Without Consent*

57. All three Defendant ICE Agents later searched Plaintiff Martinez's apartment, as well as packages, drawers, and bags, without a warrant, consent, or probable cause.

### D. *Warrantless Search and Seizure of Plaintiff Rodas and Her Effects*

58. While the shorter Defendant ICE Agent ordered Plaintiff Martinez to present herself to 247 Venture Circle, Plaintiff Rodas was using her cellular phone to speak with local immigrants' rights advocates and ask what could be done to stop the abusive treatment she was witnessing.

59. While Plaintiff Rodas was speaking with one of the advocates, the Defendant ICE Agent who had initially guarded the front door and who later interrogated C.M. overhead her conversation. He grabbed the phone out of Plaintiff Rodas's hand and ended the call.

*Page 9 of 19*

Case 3:11-cv-01030   Document 1   Filed 10/27/11   Page 9 of 19 PageID #: 9

60. This Defendant ICE Agent proceeded to search the cellular phone's phonebook and call log without Plaintiff Rodas's consent.

61. This Defendant ICE Agent handed the phone back to Plaintiff Rodas when he was done.

62. One of the Defendant ICE Agents subsequently wrote down Plaintiff Rodas's license plate number, indicating to her that they could make trouble for her in the future if Plaintiff Martinez did not present herself the following day to 247 Venture Circle.

### E. *NVLFOT's Documented Pattern and Practice of Illegal Home Entries*

63. Plaintiffs' experience with warrantless home invasion and illegal seizure by agents of ICE's Nashville Fugitive Operations Team is not unique.[1]

64. Defendant Gaines's supervision of the NVLFOT has created a culture of impunity for constitutional violations.

65. Fugitive Operations Teams in Nashville and across the country have a longstanding, well-documented record of conducting warrantless invasions into homes using the pretext of searching for a dangerous criminal alien, then making solely collateral, often race-based arrests of people they are not tasked with searching out and apprehending.

66. FOTs in Nashville rarely use administrative or judicial warrants to conduct enforcement activities unless they happen to be working in conjunction with a local law enforcement agency that independently sought a warrant. Instead, the pattern, practice, and custom of Defendant Gaines's NVLFOT officers is to single out a home or area and conduct "knock-and-talks."

---

[1] *See, e.g., Cahuec-Castro v. Worsham*, No. 3:11-cv-00928 (M.D. Tenn. filed Sept. 30, 2011); *Tapia-Tovar v. Epley*, No. 3:11-cv-00102 (M.D. Tenn. filed Feb. 4, 2011); *Nunez-Escobar v. Gaines*, No. 3:11-cv-00994 (M.D. Tenn. filed Oct. 19, 2011).

67. Rather than obtaining an administrative or judicial warrant for their intended targets, NVLFOT officers regularly prepare a "Field Operations Worksheet" in advance of conducting a knock-and-talk.

68. In contrast to an administrative or judicial warrant, Field Operations Worksheets require no finding of probable cause or reasonable suspicion before targeted a home.

69. Fugitive Operations Worksheets require only minimal, cursory supervision by Defendant Gaines, and they provide no mechanism for accountability regarding the targets sought versus the subjects actually arrested.

70. Despite persistent allegations of nonconsensual, warrantless entries into private homes by NVLFOT officers, Defendant Gaines has employed no accountability system to verify the voluntary, knowing consent of subjects whose homes FOT officers enter.

71. As a direct consequence of the failure of NVLFOT officers and Defendant Gaines to comply with the warrant requirements of the Fourth Amendment and ICE's governing statutes and regulations, NVLFOT regularly targets the wrong home based on outdated or incorrect information. Regardless, NVLFOT officers frequently arrest, and their supervisor, Defendant Gaines, agrees to detain and process for immigration violations, individuals who are collateral to the initial operation and were not originally targeted.

72. The entry, searches and seizures that follow from NVLFOT knock-and-talk operations are almost always reported by NVLFOT officers as being consensual.

73. In reality, FOT officers have an extensive history of engaging in a pattern, practice, and custom that involves forcing entry or gaining consent through threats and coercion. Once inside private homes, FOT agents gather subjects into a central area such as a living room and then search the entire home without warrant, consent, or exigent circumstances.

*Page 11 of 19*

Case 3:11-cv-01030   Document 1   Filed 10/27/11   Page 11 of 19 PageID #: 11

74. The unlawful tactic Defendant ICE Agents employed in this case of enlisting apartment managers and staff to gain warrantless entry into a private home where the residents have unambiguously refused ICE agents entry is also one that has been repeated by NVLFOT officers at other apartment complexes in the Nashville metropolitan area.

75. Describing the conduct of FOTs elsewhere in the country, a senior local law enforcement official has stated, "In conversations with representatives of ICE, it was reported to me that in all 131 homes they asked for and received consent to enter . . . In my 29 years of police work, I have executed countless warrants and have sought consent to enter countless homes. ICE's claim that they received 100% compliance with their requests to enter is not credible under even the best of circumstances."

76. Supervisor Gaines has utterly failed to control the abusive and sometimes violent practices of Defendant ICE Agents, and the entire NVLFOT, or to put in place practices and policies that would offer accountability when such abuses occur.

**FIRST CAUSE OF ACTION**
ILLEGAL ENTRY INTO A PRIVATE HOME IN VIOLATION OF THE FOURTH AMENDMENT
*Plaintiffs Martinez, C.M., and A.M.*
(**Bivens** *claim against Defendant ICE Agents*)

77. The foregoing paragraphs are incorporated by reference.

78. Defendant ICE Agents entered Plaintiffs' residence without a warrant or consent, and without probable cause or the presence of any exigent circumstance, in violation of Plaintiffs' right to be free from unreasonable searches under the Fourth Amendment to the United States Constitution.

79. By entering Plaintiffs' home without a valid search warrant, without consent, and without probable cause and exigency that would render such intrusion reasonable, Defendant ICE Agents violated Plaintiffs' Fourth Amendment rights.

80. As a result of these Defendants' egregious and unlawful actions, the Plaintiffs have suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.

### SECOND CAUSE OF ACTION
**UNREASONABLE SEARCHES IN VIOLATION OF THE FOURTH AMENDMENT**
*All Plaintiffs*
(**Bivens** *claim against Defendant ICE Agents*)

81. The foregoing paragraphs are incorporated by reference.

82. By searching Plaintiffs' residence and personal effects without a valid search warrant, without consent, and without probable cause and exigency that would render such intrusion reasonable, Defendant ICE Agents violated the Fourth Amendment rights of Plaintiffs to be free from unreasonable searches and seizures, including unreasonable intrusions into their homes by government officers.

83. As a result of these Defendants' actions, Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.

### THIRD CAUSE OF ACTION
**UNREASONABLE SEIZURES IN VIOLATION OF THE FOURTH AMENDMENT**
*All Plaintiffs*
(**Bivens** *claims against Defendant ICE Agents*)

84. The foregoing paragraphs are incorporated by reference.

85. By detaining Plaintiffs without a valid deportation warrant, arrest warrant, or probable cause and exigency that would render such seizures reasonable, Defendant ICE Agents violated the Fourth Amendment rights of Plaintiffs to be free from unreasonable seizures.

86. As a result of these seizures, Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.

### FOURTH CAUSE OF ACTION
**CONSPIRACY TO VIOLATE FOURTH AMENDMENT**

*Plaintiffs Martinez, C.M., and A.M.*
**(Bivens *claim against all Defendants <u>except</u> Defendant Gaines*)**

87. The foregoing paragraphs are incorporated by reference.

88. Defendants, acting under color of federal law, conspired with each other, worked in concert and agreed or reached a mutual understanding to provide Defendant ICE Agents a copy of the key to Plaintiffs' apartment and thus circumvent her clear and unambiguous exercise of the right to refuse consent to enter and search her home.

89. In furtherance of that agreement Defendants worked in concert to subvert the probable cause and warrant requirements of the Fourth Amendment by supplying and receiving a management copy of the key to Plaintiffs' apartment.

90. In furtherance of that agreement, Defendant Jane Roe threatened Plaintiff Rodas with arrest when she inquired about the existence of a warrant or other justification to enter Plaintiffs' residence.

91. Defendants acted willfully, deliberately, maliciously, or with reckless disregard of Plaintiffs' constitutional rights.

92. As a result of these Defendants' conspiracy and actions, the Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.

### FIFTH CAUSE OF ACTION
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**
*Plaintiffs Martinez, C.M., and A.M.*
**(Bivens *claim against Defendant ICE Agents*)**

93. The foregoing paragraphs are incorporated by reference.

94. Plaintiffs enjoyed a clearly established, constitutionally protected substantive due-process right under the Fifth Amendment to the United States Constitution to be free from

abusive government conduct that shocks the conscience and violates their fundamental rights to fairness and due process of law.

95. Defendants deprived Plaintiffs of their liberty in a manner that was without due process of law and was fundamentally unfair in the totality of the circumstances, in violation of the Plaintiffs' rights under the Fifth Amendment to the United States Constitution.

96. Defendants' premeditated, forced entry of Plaintiffs' private home, reprehensible disregard for the basic protections of law, and violative intrusion of private spaces constitutes an abuse of federal authority that shocks the conscience and offends even the most minimal standards of acceptable behavior.

97. Defendants' physical seizure and coercive questioning of Plaintiff C.M., a less than three-year-old United States Citizen, constitutes an abuse of federal authority that shocks the conscience and offends even the most minimal standards of acceptable behavior.

98. Defendants' seizure, coercive questioning, and threatening of Plaintiff Martinez with the loss of her children constitutes an abuse of federal authority that shocks the conscience and offends even the most minimal standards of acceptable behavior.

99. Defendants' warrantless and irregular demand that Plaintiff Martinez report to an ICE facility with her children and without her passport by 9:00 a.m. the following morning constitutes an abuse of federal authority that shocks the conscience and offends even the most minimal standards of acceptable behavior.

100. As a result of Defendants' actions, Plaintiffs suffered damages, including but not limited to, loss of liberty, humiliation, fear, and emotional distress.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS**
*All Plaintiffs*
(**Bivens** *claim against Defendant Gaines*)

*Page 15 of 19*

Case 3:11-cv-01030   Document 1   Filed 10/27/11   Page 15 of 19 PageID #: 15

101. The foregoing allegations are incorporated by reference.

102. Defendant Gaines supervised ICE NVLFOT Defendants John Does 1-3 in their dealings with all subjects encountered at the Hickory Hollow Apartments on October 27, 2010.

103. Defendant Gaines had both actual and constructive knowledge of his subordinates' activities and practices, and the pervasive and unreasonable risk of constitutional injury these activities posed to persons like the Plaintiffs.

104. Defendant Gaines's response to that knowledge was so inadequate as to demonstrate deliberate indifference or tacit authorization of the constitutionally offensive practices engaged in by Defendant ICE Agents.

105. Defendant Gaines's deliberate indifference and/or tacit authorization of the unconstitutional practices of his superiors represents an affirmative causal link between Gaines's inaction and the constitutional injuries suffered by the Plaintiffs.

106. Specifically, Defendant Gaines personally participated in the other ICE Defendants' egregious violations of Plaintiffs' clearly established constitutional rights. Upon information and belief, Defendant Gaines reviewed and approved Defendant ICE Agents' Field Operations Worksheet and after-action report. Neither document indicated that a warrant would be obtained to target a specific, private residence. Upon information and belief, Defendant ICE Agents' after-action report indicated to Defendant Gaines that Defendant ICE Agents utilized a copy of the key to the apartment supplied by the private party Defendants to make entry into Plaintiffs' apartment.

107. More broadly, Defendant Gaines had actual or constructive knowledge of the widespread practice of his FOT to make "dynamic entries" into homes during "knock-and-talk" operations, and all practices described in Section E of Plaintiffs' factual allegations *supra*.

108. As a result of Defendant Gaines's deliberate indifference and/or tacit authorization of pattern of unconstitutional practices engaged in by Defendant ICE Agents, Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.

**SEVENTH CAUSE OF ACTION**
NEGLIGENCE
*Plaintiffs Martinez, C.M., and A.M.*
(*Tennessee common law tort claim against Defendants New Birnam, RP, and Roe*)

109. The foregoing paragraphs are incorporated by reference.

110. Defendants, their agents and assigns owed a common law duty of care to Plaintiffs to ensure their quiet use and enjoyment of their apartment residence.

111. This duty included the duty to afford Plaintiffs – as Apartment 32's lawful tenants – exclusive control of their residence during the lease period.

112. Defendant Roe, acting within the scope of her authority as an employee of Defendants RP and/or New Birnam, breached Defendants' duty of care by using and/or allowing Defendant ICE Agents to use a key to open the locked door to Plaintiffs' apartment.

113. Defendants suffered nominal and dignitary damages as well as severe emotional distress as an actual and proximate cause of Defendants' breach.

**EIGHTH CAUSE OF ACTION**
VIOLATIONS OF THE TENNESSEE UNIFORM RESIDENTIAL LANDLORD-TENANT ACT
*Plaintiffs Martinez, C.M., and A.M.*
(*TURLTA tort claim against Defendants New Birnam, RP, and Roe*)

114. The foregoing paragraphs are incorporated by reference.

115. The Hickory Hollow Apartments complex is located within Davidson County. Pursuant to Tennessee law, landlord-tenant relations therein are governed by the Tennessee Uniform Residential Landlord Tenant Act ("TURLTA"). Tenn. Code Ann. §§ 66-28-101, *et seq.*

116. Tenn. Code Ann. § 66-28-154 provides a remedy of damages and attorney's fees whenever "the landlord makes an unlawful entry" into a tenant's home.

117. Under Tenn. Code Ann. § 66-28-403(b), a "landlord may enter the dwelling unit without consent of the tenant in case of emergency. 'Emergency' means a sudden, generally unexpected occurrence or set of circumstances demanding immediate action."

118. Defendants violated the TURLTA by providing Defendant ICE Agents the key to Plaintiffs' residence after Defendant ICE Agents informed Defendants that Plaintiffs had refused to open the door.

119. Plaintiffs have suffered damages and incurred attorney's fees as an actual and proximate cause of Defendants' violation.

## NINTH CAUSE OF ACTION
### INVASION OF PRIVACY - INTRUSION UPON SECLUSION
*Plaintiffs Martinez, C.M., and A.M.*
(*Tennessee common law tort claim against Defendants New Birnam, RP, and Roe*)

120. The foregoing paragraphs are incorporated by reference.

121. Plaintiffs had a reasonable expectation of privacy inside their residence.

122. Defendants intentionally invaded that privacy and intruded into Plaintiffs' private space by using a key or allowing ICE to use a key in order to enter Plaintiffs' home without consent.

123. Any such intrusion into a private home would be highly offensive to a reasonable person.

124. As an actual and proximate cause of Defendants' intention intrusion upon Plaintiffs' seclusion inside their residence, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court grant the following relief:

(a) Enter a declaratory judgment that Defendants violated Plaintiffs' rights under the U.S. Constitution and Tennessee law;

(b) Award Plaintiffs their nominal and actual damages;

(c) Award Plaintiffs compensatory damages in an amount to be determined at trial, and hold Defendants jointly and severally liable for compensatory damages;

(d) Award Plaintiffs punitive damages in an amount to be determined at trial;

(e) Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

(f) Award Plaintiffs their reasonable costs, expenses, and attorney's fees; and

(g) Grant such further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.

Dated: October 27, 2011

Respectfully submitted,

*/s/ Elliott Ozment*
Elliott Ozment, BPR # 004331
R. Andrew Free, BPR # 030513*
Immigration Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN 37212
(615) 321-8888 (O)
(615) 321-5230 (F)
elliott@ozmentlaw.com
afree@ozmentlaw.com

*Application for Admission pending